UNITED STATES, Appellee

v.

MARVIN E. TOMS, Sergeant First Class,
U. S. Army, Appellant

3 USCMA 435, 12 CMR 191

No. 2669

Decided November 27, 1953

MAJ Edwin Doran, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellant.

LT COL William R. Ward, U. S. Army, 1ST LT Donald M. Sukloff, U. S. Army, and 1ST LT Bernard A. Feuerstein, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was tried by general court-martial in a joint trial with one Sergeant First Class Milton Van Landingham, who is not a party to this appeal. The specification charged aggravated arson in violation of Article 126, Uniform Code of Military Justice, 50 USC § 720, and the Government's theory was that the accused and Sergeant Van Landingham willfully and maliciously set fire to an inhabited dwelling, the Kamekawa Hotel, which was of a value of approximately $10,-000.00. The accused was sentenced to a dishonorable discharge, total forfeitures and confinement at hard labor for one and one half years. The reviewing authorities upheld the findings and sentence but the dishonorable discharge was suspended until the completion of appellate review or confinement, whichever occurs on the later date. We granted review to determine whether the law officer erred to the prejudice of the accused when he explained the reason he did not grant a motion for a finding of not guilty.

The evidence shows that the accused and three other soldiers left their military area to go to the hotel which was later set afire. Upon their arrival an argument ensued between Sergeant Van Landingham and the proprietor of the hotel. The other two soldiers, Sergeant Fowler and Sergeant Anderson, left shortly after this occurrence. However, the accused and Van Landingham loitered outside the hotel. After a short time, Van Landingham announced his intention to destroy the building and he obtained some matches from the accused. Van Landingham went back inside the hotel and set fire to one of the doors which was constructed of a wood frame with paper panels. The fire was noticed by the daughter of the owner of the hotel who immediately extinguished it. The damage was not great but the burning was adequate to constitute arson and the sufficiency of the evidence to support the findings is not in issue before us.

When the Government had completed its presentation of evidence, including a pretrial confession by the accused, defense counsel made a motion for a finding of not guilty on the grounds that the corpus delicti of arson had not been established and the sole evidence of guilt was to be found in the statement of the accused. The motion was overruled by the law officer, without comment, subject to any objections by a member of the court. There were no objections and the hearing proceeded. Only one witness was called on behalf of the accused, and she was asked but one question. Arguments of counsel then followed and the law officer fully and properly informed the court-martial members of the elements of the offense for which the accused was being tried. He further instructed them as required by Article 51(c) of the Code, 50 USC § 626, and each of the four subdivisions read by him notified the court members that "reasonable doubt" was the test to be used in making determinations against the accused. After the instructions, the court retired to vote upon the findings. In a short time the law officer was called before the court members and was asked by the president for his opinion concerning the evidentiary posture of the case. He properly informed the president that such an opinion could not be given in a closed conference and that they would have to reopen the court and determine the matter in the presence of the accused and his counsel. The following are the questions and replies which were posed and answered after the court reopened:

"PRES: The court has been opened to ask a legal opinion of the law officer on a point of law. The court has the statement of Sergeant Toms concerning his actions and his presence at the time and place of the alleged offenses. The presence of Sergeant Toms at the place of the alleged offense is uncorroborated, however it is corroborated in the testimony that the offense was probably committed by someone. The court wishes to know if, in the opinion of the law officer, such evidence could sustain a finding of guilty in the case of Sergeant Toms?

"LO: The law officer does not feel that he can answer that question, in that it is a question of fact whether the court is convinced beyond a reasonable doubt that Sergeant Toms did commit the offense and for that reason the law officer cannot answer that question. The evidence is before the court and the court can only consider the statement of Sergeant Toms himself against Sergeant Toms and can consider the statement of Sergeant Van Landingham only against Sergeant Van Landingham and not in any way against Sergeant Toms. The statements were admitted into evidence and may be considered by the court, that is as far as the law officer can go in explaining that particular question.

"PRES: The court is not asking for an opinion as to the guilt of Sergeant Toms. The court is asking only for your opinion as to the legal sufficiency of the evidence as it now stands in the event the court does find that Sergeant Toms is guilty beyond a reasonable doubt.

"LO: In overruling the motion of the defense for a finding of not guilty, the law officer deemed that

**437**

there was, *'substantial evidence which, together with all proper inferences to be drawn therefrom and all applicable presumptions, reasonably tends to establish every essential element of an offense charged.'* (Par 71a, MCM, 1951)." [Emphasis supplied].

Following this colloquy, Sergeant Anderson was called as a witness for the court in an attempt to establish the presence of the accused at the scene of the crime. After listening to his testimony, the court again retired to deliberate without being further instructed by the law officer. The deliberations resulted in findings of guilty as to both the accused and Van Landingham.

The italicized portion of the law officer's last answer is the basis for accused's contention that the law officer misinstructed the court to his prejudice. It need hardly be remarked that the mere statement by the law officer is not objectionable per se. It is the precise language used in the Manual to set out the test a law officer and the court-martial should use in determining the merits of a motion for a finding of not guilty on insufficiency of the evidence. Furthermore, in United States v. Andis, 2 USCMA 364, 8 CMR 164, decided March 31, 1953, we made it clear that the law officer has the right to comment upon the reasons for denying a motion for such a finding. In that case, defense counsel made a motion for a finding of not guilty and the law officer made a statement which accused contended eliminated the presumption of innocence. There, the comment by the law officer, taken in its proper context, dealt with reconciliation of conflicts in the testimony and it was made in explanation of his reasons for denying the motion. We held that it was not improper for the law officer to make an explanation and we think in this instance he was doing no more.

Accused seeks to differentiate this case from the *Andis* case, *supra,* by contending that the explanation given in this instance by the law officer erroneously led the members of the court-martial to believe that the burden of proof was less than that which must convince beyond a reasonable doubt. While it must be agreed ▌ that the statement by the law officer is not a correct statement of the burden of proof in a criminal proceeding, we think it clear that the information he gave was never given, intended, or taken for that purpose. It was, however, a correct statement of the test he, and the court-martial, must use on a motion for a finding of not guilty and one which the court-martial was entitled to know. A court-martial has the right, as a matter of law, to overrule a law officer on that motion and it is entirely conceivable the members might have been considering the possibility of differing with the law officer on his ruling. Considering the statement in the total setting in which we find it, the conclusion is inescapable that the court-martial members were fully aware of the limitations imposed by the questions they were asking and the restriction implicit in the answers the law officer gave to the questions. The court members did not ask for an opinion on the burden of proof imposed on the Government in establishing guilt and they were likewise not requesting clarification or amplification of the words "reasonable doubt." The court was genuinely concerned about corroborative evidence to meet the Manual provision that an accused cannot be convicted upon his uncorroborated confession and whether there was sufficient evidence to meet the demands of that rule. The remarks of the law officer were prefaced by the words "in overruling the motion of the defense for a finding of not guilty." There was but one motion involving that issue so there can be no confusion as to what motion the law officer had reference to. No doubt the specific problem which bothered the court was the fact that Van Landingham was seen in the hotel; but no one had seen the accused, Toms, in that vicinity. The only mention of his presence is to be found in his own confession, and the confession of Van Landingham. The evidence in the latter's confession could not be used against the accused and realizing this, the court was desirous of knowing whether the fact that the crime had been committed

by someone was sufficient to corroborate the confession. That the court-martial members were concerned about that subject is made certain by the fact that after the explanation the court called Sergeant Anderson as a witness. The questions asked him were directed entirely toward strengthening that circumstance. While the explanation of the law officer may not have been of much assistance to the court members in solving their dilemma, it neither confused them on the burden of proof nor on the ultimate question of guilt or innocence. We must interpret the purpose of the questions from the language used and the president expressed clearly that the members were not seeking an opinion on the guilt or innocence of the accused but what they wanted was an opinion on the legal sufficiency of the evidence "in the event the court does find that Sergeant Toms is *guilty beyond a reasonable doubt.*" Moreover, the very question posed by the president mentions corroboration, and from its tenor it is readily apparent that he spoke of proof of the corpus delicti, and not of the ultimate guilt or innocence of the accused.

Not only does the colloquy between the president of the court and the law officer show that they understood the subject being discussed but the record otherwise shows clearly there could be no misunderstanding on the part of other court members. This law officer emphasized and reemphasized the standards the evidence must reach before the court could return a finding of guilt. On at least seven occasions he reminded the court-martial members that the quantum of evidence for conviction was "beyond a reasonable doubt." In addition, he fully and properly informed them that they should disregard any comment or statement made by him which suggested any opinion as to the guilt or innocence of the accused as that was a matter of the court-martial members' independent responsibility. While it is true that that admonition preceded the colloquy complained of, we are unable to see how it could have been disregarded by the court-martial during the final deliberations. It might have been better practice for the law officer to repeat the caveat after his discussion with the court but the record affirmatively establishes that both the law officer and the president were discussing an interlocutory question and not one on final submission. It being apparent that the discussion involved a matter of law rather than fact, even if we assume error on the part of the law officer, there is no reasonable possibility of prejudice.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.